

**EOD**

12/01/2009

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| KENNETH FOX JR., | § | Case No. 08-40491 |
| | § | (Chapter 7) |
|     Debtor. | § | |
| ——————————————— | § | |
| | § | |
| TERRY V. and DELPHA Z. RANDAZZO, | § | |
| | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | Adv. Proc. No. 08-4094 |
| | § | |
| KENNETH FOX JR., | § | |
| | § | |
|     Defendant. | § | |

## <u>MEMORANDUM OPINION</u>

On August 19, 2009, this Court conducted a trial of the adversary complaint filed by the Plaintiffs Terry V. and Delpha Z. Randazzo against the Defendant Kenneth Fox, Jr. The Plaintiffs seek a judgment against the Defendant for their actual damages arising from the Defendant's alleged misrepresentations to Plaintiffs. The Court exercises its core jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A), (I) and (O). This Memorandum Opinion embodies the Court's findings of fact and conclusions of law. *See* FED. R. BANKR. P. 7052.[1]

## I.

Prior to filing for bankruptcy, the Defendant owned and operated a corporation

---

[1] To the extent any of the following findings of fact are construed as conclusions of law, they are hereby adopted as such. Likewise, to the extent any of the following conclusions of law are construed as findings of fact, they are hereby adopted as such.

known as K. Fox & Associates, Inc. d/b/a Ken Fox Custom Homes ("Fox Inc.").[2]  Fox Inc. contracted in writing to construct a home and pool for the Plaintiffs on property owned by the Plaintiffs in Dallas County, Texas.  The contract provided that the Plaintiffs would pay Fox Inc. a flat fee in the amount of $175,000.00, plus costs, plus a 20% fee for any change orders exceeding $20,000.  The contract contemplated, but did not guaranty, that the cost of construction would not exceed $1,415,188.00.

The Plaintiffs instructed Fox Inc. to make numerous changes to the plans for their home during its construction, including adding an upstairs room.  Fox. Inc. did not generate any change orders in response to these requests.  Rather, Fox Inc. included the invoices for work associated with the changes with the other costs of construction in its periodic draw requests.

During the construction of the Plaintiffs' home, the Defendant prepared and submitted a total of 31 draw requests to the Plaintiffs for interim payment of the costs of construction.  The draw requests attached copies of invoices the Defendant claimed to have received from subcontractors for Fox Inc.  The Defendant certified that each of these draw requests was correct to the best of his knowledge at the time he submitted each request to the Plaintiffs.

The Plaintiffs made payments to Fox Inc. pursuant to its periodic draw requests from the inception of the construction contract until they moved into the house on or about July 4, 2005.  After moving into the house, an issue arose with a particular subcontractor, Ari-Tex Electric, Inc. ("Ari-Tex").  The Plaintiffs saw a copy of the invoice that Ari-Tex had submitted to Fox Inc. for its work and realized that the invoice

_____

[2] Fox Inc. ceased operating in 2007.  The Defendant listed his 100% interest in Fox Inc. in his bankruptcy schedules, and he valued that interest at $0.00.

did not match the invoice they had received from Fox Inc. for reimbursement. The Plaintiffs established at trial that the Defendant sometimes received duplicate invoices from subcontractors and that he chose to submit the higher of otherwise-identical invoices to the Plaintiffs on several occasions. The Plaintiffs also established that the Defendant may have falsified at least one invoice.

After resolving the issue with Ari-Tex, the Plaintiffs remained suspicious that Fox Inc. was overcharging them for the costs of construction by submitting inflated or duplicate invoices with the draw requests. The Plaintiffs did not refer any dispute regarding the draw requests for resolution as contemplated by the construction agreement. Instead, the Plaintiffs began to withhold funds from Fox Inc. by paying Fox Inc. less than the draw requests.

Fox Inc. completed construction of the Plaintiffs' home in or around October 2005. On October 5, 2005, the parties entered into an Agreement for Completion of Contract Work (Escrow Repair Agreement). Pursuant to this agreement, the Plaintiffs paid $18,789.59 to the title company to cover any final claims by Fox Inc. for the punch-list items and other work described in the agreement. Excluding these escrowed funds, the Defendant introduced evidence at trial that the Plaintiffs have paid Fox Inc. the total sum of $1,483,102.64.[3]

Prior to filing for bankruptcy, the Defendant hired two certified public accountants to review the records relating to his construction of the Plaintiffs' home in order to determine whether the Plaintiffs had overpaid Fox Inc. One of these accountants, Maurice LaVerdure, testified at trial. According to Mr. LaVerdure's

---

[3] The parties did not discuss whether Fox Inc. has received the final payment due under the contract. Article 20.5 of the contract provides that the final payment is a waiver of most claims between the parties.

3

analysis, the net amount of $40,826.83 is owed by the Plaintiffs to the Defendant. This figure includes the total sum of $19,794.27 in invoices paid by Fox Inc. but not submitted to the Plaintiffs in any of the draw requests. This figure also includes a fee of $21,632.43 for change orders identified by the Defendant totaling $133,721.14. Mr. LaVerdure's analysis relies upon the benefit of hindsight and credits the Plaintiffs and Fox Inc. for the overcharges on certain invoices as well as the underpayments on certain draw requests.

At trial, the Plaintiffs sought to establish that they overpaid Fox Inc. the total sum of $53,999.06.[4] The Plaintiffs arrived at this figure by identifying several specific occasions on which the Defendant submitted the higher of two otherwise-identical invoices to them for reimbursement while paying the lower amount to the subcontractor. Although there is no dispute that the Plaintiffs did not make full payment to Fox Inc. in connection with several draw requests, the Plaintiffs have not reduced their damages claim to account for the payments they did not make to Fox Inc.

## II.

A determination of nondischargeability is a two step process. First, the Plaintiffs must establish a claim against the Defendant's bankruptcy estate under relevant state or non-bankruptcy federal law. *See Grogan v. Garner,* 498 U.S. 279, 283-84 (1991). Only then does the issue of nondischargeability come into play. A creditor cannot get beyond the first step if its underlying claim fails.

---

[4] The Plaintiffs sought to increase this figure in their post-hearing briefs based on their interpretation of a chart prepared by Mr. Martin, an accountant who did not testify at trial. The chart is, at best, confusing. Although Mr. Martin and Mr. LaVerdure arrived at similar results, Mr. LaVerdure could not explain Mr. Martin's methodology. Moreover, the figure the Plaintiffs extract from the chart to support their increased claim of damages is not supported by the specific evidence of over-payments introduced by the Plaintiffs at trial.

4

Here, the Plaintiffs entered into a construction contract with Fox Inc.  The Plaintiffs argue that they are entitled to a claim against the Defendant for damages in the amount of all overpayments they made to Fox Inc. based on the draw requests he prepared for Fox Inc. and submitted to them.  The Plaintiffs further assert that the Defendant may not use their underpayments on any draw requests to reduce his liability, because the right to collect any underpayments belongs to Fox Inc., not the Defendant personally.  However, the Plaintiffs failed to provide this Court with any authority to support their arguments at trial or in their post-trial submission on damages.

The Court, having considered the parties' arguments and the evidence admitted at trial, concludes that the preponderance of the evidence does not establish a loss by the Plaintiffs.  Mr. LaVerdure's detailed and credible analysis revealed that Fox. Inc. paid $1,307,502.77 to various subcontractors for the construction of the Plaintiffs' home and pool.[5]  In addition, pursuant to the terms of the construction contract, Fox Inc. is entitled to a builder's fee of $175,000.  Mr. LaVerdure's analysis also revealed that Fox Inc. paid an additional $19,794.27 to subcontractors but has not yet received reimbursement for these payments from the Plaintiffs.  Thus, setting aside the question of whether Fox Inc. is entitled to change order fees,[6] the total sum of $1,502,297.04 was due and owing to

---

[5] The Court recognizes that Mr. LaVerdure's analysis contains some errors regarding the calculation of over- and under-payments on particular invoices.  However, these errors did not change Mr. LaVerdure's global analysis of the total amounts paid and owing under the construction contract.  Indeed, the Plaintiffs rely upon Mr. LaVerdure's global analysis in their arguments regarding damages.

[6] With respect to whether Fox Inc. is entitled to change order fees, the Defendant established that Fox Inc. complied with several requests by the Plaintiffs for alterations to the plans for the construction of their home.  The Defendant further established that Fox Inc. included the charges for the alterations with the other invoices submitted to the Plaintiffs for payment.  The Court finds that the parties, through their course of conduct, waived any requirement in the construction contract that Fox. Inc. must generate written change orders.

5

Fox Inc. under the construction contract.  There is no dispute that the Plaintiffs have paid Fox Inc. only $1,483,102.64.

In their nondischargeability claim, the Plaintiffs argue that the Defendant deliberately made false representations to them in connection with the draw requests, and that his liability to them for these misrepresentations is nondischargeable under §523(a)(2)(A).[7]  Section 523(a)(2)(A) provides that a debt is non-dischargeable if it is "for money, property, services, or an extension, renewal, or refinancing of credit," to the extent that it was "obtained by false pretenses, a false representation, or actual fraud." For a debt to be nondischargeable under §523(a)(2)(A), "the creditor must show (1) that the debtor made a representation; (2) that the debtor knew the representation was false; (3) that the representation was made with the intent to deceive the creditor; (4) that the creditor actually and justifiably relied on the representation; and (5) that the creditor sustained a loss as a proximate result of its reliance."  *In re Acosta,* 406 F.3d 367, 372 (5th Cir. 2005) (citing *In re Mercer,* 246 F.3d 391, 403 (5th Cir. 2001)).

In this case, as previously discussed, the Plaintiffs established that the Defendant prepared draw requests for Fox Inc. in which he requested reimbursement for the higher of otherwise-identical invoices, and that he may even have falsified at least one invoice. While these facts are certainly troubling, the Plaintiffs must establish damages as well as false statements or actual fraud by the Defendant in order to obtain a non-dischargeable judgment.  The provisions of §523(a) do not make a debtor liable to a creditor -- they merely determine whether an existing liability is a dischargeable one.  Here, the Plaintiffs

---

[7] The adversary complaint also included a claim for nondischargeability under §523(a)(4).  The Plaintiffs did not pursue this claim at trial or in their closing arguments and, therefore, the Court will not address the §523(a)(4) claim in this Memorandum Opinion.

failed to establish any damages arising from the Defendant's alleged misrepresentations or, consequently, a debt owing by the Defendant to them.

### III.

For the foregoing reasons, the Court concludes that the Plaintiffs should take nothing by way of their adversary complaint. The Plaintiffs failed to establish a nondischargeable claim against the Defendant pursuant to §523(a)(2)(A) of the Bankruptcy Code. The Court will enter a separate judgment consistent with this Memorandum Opinion.

Signed on 12/01/2009

*Brenda T. Rhoades*    MD

HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE